BANK OF RAVENNA, Respondent, v. NANCY E. DOBBINS, Appellant.

Kansas City Court of Appeals, December 1, 1902.

Bills and Notes: LIABILITY ON: ESTOPPEL: RATIFICATION: PREVIOUS AUTHORITY: EVIDENCE. The evidence is reviewed and held insufficient to make defendant liable on the ground of estoppel or ratification of the previous authority of her husband to sign her name.

Appeal from Mercer Circuit Court.—*Hon. Paris C. Stepp,* Judge.

REVERSED.

*Orton & Orton* and *Ira B. Hyde & Son* for appellant.

(1) An agency can. not be proven by the admissions or statements of the supposed agent. Bank v. Morris, 125 Mo. 1. c. 350; Mitchum v. Dunlap, 98 Mo. 418, and cases cited; Iron Co. v. St. Louis Co., 112 Mo. 383; Bank v. Leyser, 116 Mo. 51, 1. c. 68; Mechem on Agency, sec. 100. (2) An agency may be implied from the conduct and acquiescence of the principal; the nature and extent of the authority may be inferred from

circumstances—but if the agency arises by implication from numerous acts done by the agent with the tacit consent or acquiescence of the principal, it is deemed limited to acts of like nature. Cummings v. Hurd, 49 Mo. App. 139; Sharp v. Knox, 48 Mo. App. 169; Gibson v. Zeibig, 24 Mo. App. 66; Grocery Co. v. Copen, 23 Mo. App. 301; Wheeler v. Metropolitan Co., 23 Mo. App. 190; Brooks v. Jamison, 55 Mo. 505; Franklin v. Globe, 52 Mo. 461; Edwards v. Thomas, 66 Mo. 468; Greenleaf on Evidence, sec. 60; Story on Agency, secs. 45, 87. (3) In this State the courts guard with strict jealousy the rights of married women with respect to their separate property, and in order to establish an agency for the wife on the part of the husband, the evidence must be clear, cogent, strong and unequivocal, and more satisfactory than would be required between persons not occupying that relation to each other. Farley v. Stroeh, 68 Mo. App. 85; Lime Co. v. Bauman, 44 Mo. App. 386; Planing Mill v. Brundage, 25 Mo. App. 268; Barker v. Berry, 8 Mo. App. 446; Bridges v. Russell, 30 Mo. App. 258; Long v. Martin, 152 Mo. 668. (4) Acts or conduct of the agent can not be relied upon to show the authority unless shown to have been done with the knowledge and consent of the principal. The rule of holding out applies only when principal has knowledge of what the agent does. Alt v. Grosclose, 61 Mo. App. 409; Williams v. Edwards, 94 Mo. 447; Mitchum v. Dunlap, 98 Mo. 418. (5) Evidence to show agency in another kind or class of transaction than the one in controversy is inadmissible to show agency in the case in controversy. Watson v. Race, 46 Mo. App. 546.

*Platt Hubbell, Fred W. Coon* and *Ben F. Kesterson* for respondent.

(1) The fact that a husband is the agent of his wife is proved just like the agency between parties who sustain no domestic relation to each other. Farley v. Stroeh, 68 Mo. App. 90; Long v. Martin, 152 Mo. 682;

Kuenzel v. Stevens, 155 Mo. 286; Lumber Co. v. Stevens, 84 Mo. App. 562. (2) As between the principal and third persons apparent authority is, in law, real authority. McLachlin v. Barker, 64 Mo. App. 524; Hoppe v. Saylor, 53 Mo. App. 8; Bonner v. Lisenby, 86 Mo. App. 670; 2 Gr. Ev. (15 Ed.), sec. 65; Sharp v. Knox, 48 Mo. App. 177; Nicholson v. Golden, 27 Mo. App. 155; Hefferman v. Boteler, 87 Mo. App. 322. (3) While the authority of an agent can not be established by his acts and declarations alone, when proof of such authority has been made *aliunde*, the acts and declarations of the agent become competent. Sumner v. Saunders, 51 Mo. 89; Abbott's Trial Brief (2 Ed.), pages 127, 130, 133, 138, (4) This action having been begun before a justice of the peace, estoppel and ratification were properly shown without being pleaded. Adams v. Ellis, 86 Mo. App. 343; Pitman v. Min. Co., 78 Mo. App. 438; 1 Am. and Eng. Ency. of Law (2 Ed.), 1203. And silence or acquiescence is evidence of ratification. Abbott's Trial Brief (2 Ed.), page 143; 1 Am. and Eng. Ency. (2 Ed.), 1220; Weaver v. Ogletree, 39 Ga. 586; Barnett v. Gluting, 3 Ind. App. 419; 1 Am. and Eng. Ency. of Law (2 Ed.), 961, 962.

ELLISON, J.—This is an action on a promissory note in which plaintiff prevailed in the trial court.

Defendant's husband owed the plaintiff a note of $170 secured by chattel mortgage. While this note was running and unpaid he wanted $20 additional. The plaintiff's president and cashier told him he could have it if he would get his wife as security for the whole amount. A note for $190 was prepared to which the husband signed his own and the defendant's name. He also renewed the chattel mortgage. The cashier supposed that he would take the note home for his wife's signature and seeing that he signed it himself, he questioned him about it and on receiving his assurance that it was all right he accepted the note with defendant's name thus signed. The husband afterwards

absconded and plaintiff is now seeking to hold the defendant wife as a surety.

Plaintiff's case is wholly without merit as against this defendant. There is a general attempt to hold her to payment of the obligation by invoking three legal considerations which are effective when there is any evidence upon which to base them. These are estoppel, ratification and previous authority. We may dismiss the two first with the statement that there is not even an appearance of evidence to support either. The cashier's own testimony shows that he never relied upon any conduct of defendant on which to found estoppel, but on the contrary that he relied on the conduct and assurances of the husband. And as to ratification it was not shown where defendant ever had opportunity for ratification as that term is known to the law.

On the question of previous authority, the case is without legal evidence of any substantial character. It is clear that previous authority in this case must consist in a general agency to sign her name to notes generally, or else in a special authority to sign this particular note. There is no pretense of evidence to show that defendant authorized him to sign her name to this note. The cashier's wife testified that she once asked defendant "if she knew that Tom had signed her name to that note at the bank and she says, 'Yes, and that is not the first one.'" That does not prove anything bearing on the issue. It is not denied that defendant knew her husband had signed her name after the act, but knowledge of a wrong which has been perpetrated against one is surely not authority to commit the wrong.

On the issue of general authority to sign defendant's name to notes generally, the evidence, when analyzed, is equally abortive. It consisted in showing that the husband had in the course of ten or more years, signed defendant's name to four notes; and also that when her son by a former marriage wanted to borrow "some money" of the curator of the minor children of

such marriage, the son or her present husband offered to sign her name as surety, but the curator refused. In a few days defendant signed her name and remarked that it would have been all right for ''Tom'' to have signed it. That was about ten years before the signing of the note in controversy.

The next note was given to Hamilton for $42.50. It had defendant's name signed to it, but she knew nothing of it until her husband left and then she pronounced her signature a forgery and refused to pay. It was compromised by another party whose name appeared thereon.

A few weeks before the date of the note in controversy defendant's husband signed her name as his surety to one Maring for $80. Maring testified that a few days afterwards he told defendant that her name had been signed by her husband and that she replied that when it came due he could keep the amount of it out of rent which would be due from him to her. She did not say she had authorized the signing. She says she did not and the matter is now in litigation.

Another note of $300 was given to plaintiff's cashier, individually by defendant's husband with two sureties, several years prior to the one in controversy. During an absence of her husband while being treated for insanity, one of the sureties became uneasy and on defendant being notified of it, she gave her check for $100 and a new note for $200 by signing her husband's and her own name. It was not shown who paid it.

The remaining note, the giving of which was proved by plaintiff in order to establish a general agency, was for $31.50. The money was borrowed of the plaintiff bank after the date of the note in controversy and the defendant gave her husband direct authority to sign her name as surety and she afterwards paid the note.

The only thing of substance in all this, to prove that defendant gave any authority to her husband is that last recited; and it fails for one good reason if for no other. It is one special act of authority in a

disconnected transaction, to sign defendant's name to one designated note. Such isolated act is not proof of a general agency. The evidence, as a whole, totally fails to make a case.

The authorities on the subject of agency and the necessary proof thereof, and what character of evidence is sufficient, will be found collected in defendant's brief. Our conclusion as to the evidence renders it unnecessary to go into objections presented to the instructions. The judgment will be reversed. All concur.