## THE TRUST COMPANY OF ST. LOUIS COUNTY, Appellant, v. THE PHOENIX INSURANCE COMPANY OF HARTFORD, CONNECTICUT, Respondent.
## THE TRUST COMPANY OF ST. LOUIS COUNTY, Respondent, v. GERMAN-AMERICAN INSURANCE COMPANY OF NEW YORK, Appellant.

St. Louis Court of Appeals. Opinion Filed March 4, 1919.

1. **INSURANCE: Fire Insurance: Change of Ownership of Insured Property: Notice to Insurer.** Evidence *held* to establish that plaintiff mortgagee, suing upon a fire insurance policy, had knowledge of the transfer of the ownership of the insured property, and that plaintiff mortgagee, had failed to ʳⁱ⁻ ⁿ⁻ᵗ·⁻⁻ thereof to insurer.

2. **CORPORATIONS: Knowledge of Assistant Secretary is Knowledge to Corporation.** Knowledge of the Assistant Secretary of a corporation, *held* knowledge of the corporation.

3. **INSURANCE: Fire Insurance: Validity of Poncy: Change of Ownership of Property: Notice to Insurer.** Where the insured, the owner of mortgaged property, sold the property covered by the policies of insurance and no notice of such change of ownership was given to the insurer, the policies became void as to both the vendor and the purchaser.

4. ———: ———: ———: **Mortgage Clause.** Where union or standard mortgage clauses are attached to policies of insurance, they

Trust Co. v. Insurance Co.

thereby constitute a new and independent contract of insurance between the insurance company and the mortgagee, trustee for the benefit of the *cestui que trust*, which new contract is engrafted upon the main contract of insurance contained in the policy itself, and the rights and duties of the mortgagee or trustee, as well as those of the insurance company, must be determined then by the provisions of this independent contract as evidenced by the provisions of said mortgage clause taken in connection with the policy itself.

5. **CONTRACTS:** Construction: Conditional Clause: Proviso. The proviso in a mortgage clause following the word provided, to the effect that the mortgagee or trustee shall notify the insurance company of any change of ownership of the property insured coming to its knowledge, is to be construed from the words employed and from the purposes of the parties gathered from the whole instrument.

6. **INSURANCE:** Fire Insurance: Mortgage Clause: Change of Ownership of Property: Knowledge of Mortgagee: Failure to Notify Insurer. A proviso in a mortgage clause attached to a fire insurance policy, which provides that the interest of the mortgagee or trustee shall not be invalidated by any act or neglect of the mortgagor or owner of the property, ceases to be operative whenever there is a change of ownership that comes to the knowledge of the mortgagee or trustee and he fails and neglects to give notice thereto to the insurance company, and *held* that the failure on the part of the mortgagee to comply with the conditions in the mortgage clause suspends the operation of same and leaves in force and effect the provisions of the policy as to the acts on the part of the owner or mortgagor which will operate to forfeit the policy.

7. ——: ——: ——: ——: ——: ——. While the rule of law is that provisions in a policy of insurance must be given as favorable a construction to the insured as possible, yet the mortgagee, having violated the condition contained in each of the mortgage clauses by failing to give notice to the insurance company of the change of ownership, *held* the mortgagee cannot recover.

Appeal from the Circuit Court of St. Louis County.— *Hon. John W. McElhinney* and *Hon. Gustave A. Wurdeman*, Judges.

AFFIRMED (as to The Phoenix Insurance Company of Hartford, Connecticut).

REVERSED AND REMANDED (*with directions*) as to The German-American Insurance Company of New York.

*O'Niell Ryan* and *Guy A. Thompson,* for Insurance Companies.

(1) The insured, George C. and Martha L. Shanks, having sold to J. R. Kennon the property covered by the policies in question and no notice of such change of ownership having been given to the insurance companies, the insurance as to the said Shanks and Kennon is void. Marcus v. Insurance Co., 187 Mo. App. 134. (2) Had these policies been made payable merely to the Trust Company of St. Louis County, as its interest might appear, said company would have been merely an appointee to receive what, if anything, would be payable to the owner, and if for any reason the owner could not recover, the appointee could not recover. Kansas City Paper Box Co. v. Insurance Co., 100 App. 691; Roper v. Natl. Fire Ins. Co., 76 S. E. R. 869; Firemen's Fund Insurance Co. v. Palatine Ins. Co., 88 Pac. 907; Delaware Ins. Co. v. Greer, 120 Fed. 916, (C. C. A 8th Circuit, per Sanborn); Moore v. Hanover Ins. Co., 141 N. Y. 219; Agricultural Ins. Co. v. Hamilton, 82 Md. 88. (3) The Union (or Standard) Mortgage Clause that was attached to the policies constituted in each case an independent contract of insurance with The Trust Company of St. Louis County, trustee, for the benefit of the *cestui que trust,* ingrafted upon the main contract of insurance contained in the policy itself, and to be rendered certain and understood by reference to the policy, and the Trust Company of St. Louis County is firmly bound and its rights firmly fixed by the provisions of said mortgage clause. Syndicate Inc. Co. v. Bohn, 65 Fed. 165; Heilbrunn v. German Alliance Ins. Co., 140 App., Div. (N. Y.) Suppl. 374, Affd. 202, N. Y. 610; Reed v. Firemen's Ins. Co., 81 N. J. L. 523, 35 L. R. A. (N. S.) 343; (4) The proviso in said mortgage clause, that the Trust Company of St. Louis County should notify the insurance company of any change of ownership coming to its knowledge, created a condition. Simpson v. Tittrell, 1 Croke, Eliz. 242; Lord Cromwell's Case, 2 Coke, 69; Brennan

v. Brennan, 185 Mass. 560; Brewer v. Rust, 20 Okl. 776, 781; Rich v. Atwater, 16 Conn. 419; Hill v. Decatur, 22 Ga. 206; Bennett v. Baltimore, etc., Soc., 91 Md. 20; Locke v. Farmers L. & T. Co., 140 N. Y. 135, Forscht v. Green, 53 Pa. St. 108, 140. Anderson's Law Dictionary: "No better word expresses a condition, and it is always so taken unless the context shows that the intention was to create a covenant." Bouvier: "A proviso always implies a condition unless subsequent words change it to a covenant." Webster: "On condition; by stipulation." Century: "On condition; or these terms." Oxford: "With the proviso or condition that." (5) The fact of the change of ownership did come to the knowledge of the plaintiff. Link v. Jackson, 164 Mo. App. 195. Brown v. Connecticut Fire Ins. Co., 195 S. W. (Mo. App.) 62, l. c. 65 (Per Becker, J.). (6) Accordingly, the plaintiff having violated said condition by failing to give notice to the insurance companies of the change of ownership, cannot recover. Ormsby v. Phoenix Company of Brooklyn, 58 S. Dak. 72; Balantshik v. Globe Fire Ins. Co., 10 Miscel. 369, 31 N. Y. Suppl. 32; Continental Ins. Co. v. Anderson, 107 Ga. 541.; Natl. Bank v. Insurance Company, 88 Cal. 497; Cole v. Germania Ins. Co., 99 N. Y. 36; Gasner v. Metropolitan Ins. Co., 13 Minn. 483;

*T. K. Skinker* for the plaintiff in both cases.

(1) There is no such evidence that any change of ownership came to the knowledge of the plaintiff before the fire, as will warrant the court in inflicting upon the plaintiff forfeiture of its rights under these policies. (a) Kennon's letter does not necessarily mean that there was a change of ownership. (b) Neither did it impart knowledge to the plaintiff; it only gave information of a claim of ownership. Van Raalte v. Harrington, 101 Mo. 602; Utley v. Hill, 155 Mo. 232, 264; Brown v. Insurance Co., 195 S. W. 62. (2) In neither of these policies is there any provision which entitles the company to claim a forfeiture in case the mortgagee or trustee fails to give the company notice of

any change of title which may come to his knowledge. (a) The German-American policy contains no provision for forfeiture. There can therefore be none. Keeton v. National Union, 182 S. W. 798; Pioneer Loan Co. v. Insurance Co., 17 Wash. 175; Phoenix Insurance Co. v. Omaha L. & T. Co., 41 Neb. 834, 846; Hanover F. Insurance Co. v. Bohn, 48 Neb. 743, 747; Haas v. Insurance Company, 84 Neb. 682. (b.) In the absence of words of forfeiture none will be enforced. Dezell v. Fidelity, etc. Co., 176 Mo. 253, 280, 281. (c) The provision in the body of the policy that if any change shall take place in the title the policy shall be void does not affect the plaintiffs' rights. 1. Because the mortgage clause stipulates that as against the mortgagee the acts of the mortgagor shall have no effect. Adams v. Insurance Co., 115 Mo. App. 21, 25; Breeyear v. Insurance Co., 71 N. H. 445. 2. Because the body of the policy stipulates that as against a mortgagee no such provision shall be effective unless repeated in the mortgage clause. Hastings v. Insurance Co., 73 N. Y. 141; Senor v. Insurance Co., 181 Mo. 104, 115; Key v. Insurance Co., 101 Mo. App. 344, 350; Lombard Investment Co. v. Insurance Co., 62 Mo. App. 315; Welch v. Insurance Co., 148 Cal. 223; Boyd v. Insurance Co., 25 Wash. 447; Oakland Home Ins. Co. v. Bank, 47 Neb. 717; East v. Insurance Company, 76 Miss. 697; Queen Ins. Co. v. Saving Ass'n. 175 Ill. 115; Christensen v. Insurance Co., 117 Iowa, 77; Edge v. Insurance Co., 20 So. Dakota, 190; Whitney v. Burkhardt, 178 Mass. 535; Smith v. Insurance Co., 25 R. I. 260; Union Institution v. Ins. Co., 196 Mass. 230; Eliot, etc., Bank v. Assurance Co., 142 Mass. 142; Savings Bank v. Insurance Co., 166 Mass. 189; Magoun v. Insurance Co., 86 Minn. 486; Moore v. Insurance Co., 100 Minn. 374. (d) The Phoenix policy does contain words of forfeiture, but they only apply in case of failure to pay premium for increased hazard not for failure to give notice of change of ownership. The rule of strict construction against forfeitures applies. Matthews v. Modern Woodmen, 236 Mo. 326, 342; Settle

v. Insurance Co., 150 Mo. App. 527; Roseberry v. Association, 142 Mo. App. 552; Burchard v. Association, 139 Mo. App. 621; Mining Co. v. Casualty Co., 143 Mo. App. 555; La Force v. Insurance Co., 43 Mo. App. 518, 530; Belch v. Schott, 171 Mo. App. 357; Still v. Insurance Co., 185 Mo. App. 550; Terminal Ice, etc., Co. v. Insurance Co., 194 S. W. 722; Hale v. Insurance Co., 46 Mo. App. 508; Hoffman v. Accident Co., 56 Mo. App. 301; Canning Co. v. Guaranty Co., 154 Mo. App. 327; Walton v. Insurance Co., 162 Mo. App. 316; Renn v. Supreme Lodge, 83 Mo. App. 442; Foglesong v. Modern Brotherhood, 121 Mo. App. 548; 553; Leech v. Order of Railroad Telegraphers, 130 Mo. App. 5, 17; James v. Casualty Co., 113 Mo. App. 622, 630; Keeton v. National Union, 178 Mo. App. 301; Levine v. Supreme Lodge, 122 Mo. App. 547; Northey v. Insurance Co., 110 Cal. 547. 3. At the time of the receipt of Kennon's letter and from that time forward until after the fire, the plaintiff was not the owner of the policies, but was a mere naked trustee in the deed of trust, and as such was not bound to give notice of a change of ownership even if one came to his knowledge.

BECKER, J.—Plaintiff below instituted two suits upon policies of fire insurance, one against the Phoenix Insurance Company, in which judgment resulted for defendant; the other against the German-American Insurance Company, in which judgment resulted in favor of plaintiff. In due course appeals were brought here by the losing party in each case below.

While plaintiff filed both suits in the circuit court of St. Louis County, the case against the Phoenix Insurance Company was assigned to Division No. 1, and the case against the German-American Insurance Company was assigned to Division No. 2. Inasmuch as a trial to a jury had been waived and the facts in each case being identical, excepting only the wording of the mortgage clause in each of the policies of insurance sued on, the judge of Division No. 1 and the

judge of Division No. 2 of said circuit court, sat and heard the cases together. In light of this fact both appeals are brought here upon a joint abstract of the record.

Each policy of insurance, as originally written, insured. George C. and Martha L. Shanks against direct loss or damage by fire to a house numbered 6232 Chatham avenue in St. Louis County, Missouri. The Phoenix policy was in the sum of $500 and was issued July 6, 1909, and the German-American policy was in the sum of $600 and was issued August 30, 1909; each policy insuring for a period of three years from date of issue.

The said Shanks borrowed from the plaintiff, The Trust Company of St. Louis County, the sum of $1100, for which they executed their principal note in said sum, payable three years from date, and their six semi-annual interest notes each in the sum of $33. All of the notes were made payable to the order of F. J. Hollocher, who was the Assistant Secretary of the plaintiff company. To secure the payment of these said notes the Shanks executed a deed of trust on the property above described, wherein they conveyed the said premises to The Trust Company of St. Louis County as trustee for the said Hollocher, *cestui que trust*. In said deed of trust it was provided that the owners of the property were to keep the improvements upon the premises insured in the sum of $1100 and that the policies therefor were to be assigned to the trustee in the deed of trust, for the use and benefit of the holder of the notes in said deed of trust described.

Pursuant to such provision in said deed of trust, on August 30, 1909, at the direction of said Shanks and of the plaintiff, the Phoenix Insurance Company and the German-American Insurance Company each issued and attached a standard mortgage clause to the insurance policies in question in this suit. That part of the mortgage clause which was attached to the Phoenix Insurance Company's policy which is pertinent to the issue in this case, reads as follows:

"Loss or damage, if any, under this policy, shall be payable to The Trust Company of St. Louis County, mortagee (or trustee) as interest may appear, and this insurance, as to the interest of the mortagee (or trustee) only therein, shall not be invalidated by any act or neglect of the mortgagor or owner of the within described property, nor by any foreclosure or other proceedings or notice of sale relating to the property, nor by any change in the title or ownership of the property nor by the occupation of the premises for purposes more hazardous than are permitted by this policy; provided that, in case the mortgagor or owner shall neglect to pay any premium due under this policy, the mortagee (or trustee) shall, on demand, pay the same.

"Provided, also, that the mortgagee (or trustee) shall notify this company of any change of ownership or occupancy or increase of hazard which shall come to the knowledge of said mortgagee (or trustee) and, unless permitted by this policy, it shall be noted thereon, and the mortgagee (or trustee) shall, on demand, pay the premium for such increased hazard for the term of the use thereof; otherwise this policy shall be null and void."

Whereas that part of the mortgage clause with which we are concerned in the German-American policy reads as follows:

"The interest of Chas. F. Vogel, trustee, having been satisfied, loss, if any, payable to The Trust Company of St. Louis County, mortgagee or trustee, as hereinafter provided.

"It being hereby understood and agreed, that this insurance as to the interest of the mortgagee or trustee, only therein, shall not be invalidated by any act or neglect of the mortgagor or owner of the property insured, nor by the occupation of the premises for purposes more hazardous than are permitted by the terms of this policy. Provided ,that in case the mortgagor or owner neglects or refuses to pay any premium due under this policy, then, on demand, the mortgagee or

trustee shall pay the same. Provided, also, that the mortgagee or trustee shall notify this company of any change of ownership or increase of hazard which shall come to his or their knowledge and shall have permission for such change of ownership or increase of hazard duly indorsed on this policy.''

On March 26, 1910, the said Shanks conveyed said property by warranty deed to one J. R. Kennon, then of Eldorado Springs, Missouri, in exchange for some property located at Eldorado Springs. This deed was not recorded. It appears that Kennon lived elsewhere than in St. Louis County and placed this property with Surkamp & Givans, Real Estate Agents at Wellston, in St. Louis County, who obtained a tenant for the same and accounted to Kennon monthly for the rents

At the time Kennon purchased the property from Shanks the first interest note, which had fallen due January 17, 1910, had already been paid, and in July, 1910, when the next interest note was about to or had just fallen due, Kennon sent the following letter to the plaitiff trust company:

"Eldorado Springs, Mo.,
July 18th, 1910.
St. Louis County Trust Co.,
Clayton, Missouri.
Gentlemen:—

I herewith hand you check for $33 to pay the semi-annual interest on the $1,100 deed of trust held by you, signed by George C. Shanks, secured by property No. 6232 Chatham avenue. I am the owner of the property and wish you would transfer the insurance.

"In future you can send notice to me or I will have Surkamp & Givans attend to paying the interest.
Yours truly,
J. R. KENNON.

P. S. Mail interest note to me."

The plaintiff replied to the above letter as follows:

"July 19, 1910.

Mr. J. R. Kennon,
    Eldorado Springs, Mo.
Dear Sir:—

We are in receipt of your favor of the 18th instant, enclosing check for $33 in payment of the George C. Shanks' interest note, for which please accept our thanks. We have made the proper memorandum in reference to sending the notices to you and will in the future do so.

"We are not canceling the note, as the check sent by you is a personal check, but as soon as we receive return on it, will mail you the note. These personal checks cost us $.15 to collect and we would therefore request that you instruct your bank to remit to us without charge on this one or we will have to charge you whatever they charge us. In the future we must ask you to send us cashier's checks.

Very truly yours."

It further appears that early in December of 1910 Kennon received a letter from the plaintiff requesting him to pay the taxes upon the property, in conformity with which Kennon, on December 16, 1910, sent the plaintiff a check for $50 with which to pay the taxes and an interest note that was to fall due on January 17, 1911. An acknowledgment thereof is found in the following letter:

"Clayton, Mo., Dec. 23, 1910.

Mr. J. R. Kennon,
    Little Rock, Ark.
Dear Sir:—

In accordance with our letter to you of a few days ago, we are enclosing you herewith the interest note for $33, properly cancelled, together with the receipt for taxes paid and our check for $2.41, being the balance due you out of $50 which you sent us.

Very truly yours,<br>CHARLES N. GILLES,<br>Assistant Secretary."

It further appears that some time after the plaintiff made the loan to the Shanks, on the property secured by the said deed of trust, and prior to the date upon which the premises were destroyed by fire, plaintiff sold the loan to one William H. Priess, who thereafter continued to be the owner and holder thereof until after March 16, 1911, on which day the premises were destroyed by fire. After the fire, and shortly prior to the institution of these cases, the plaintiff re-purchased the loan from said Priess. During the time that Priess owned the loan the plaintiff trust company represented Priess in all matters with respect thereto, collecting the interest notes and giving attention to the payment of the taxes, etc. As to this agency the president of the plaintiff company, Mr. Hereford, testified: "We were collecting agents for William H. Priess who deposited the notes with us for collection as they became due, and we usually collected and deposited the money to his credit."

On the 21st day of March, 1910, plaintiff, by letter, notified the agents for both of the defendant insurance companies, of the destruction of the building by fire, and later made proofs of loss. Plaintiff in due course having demanded payment of the policies from the defendants, and the same being refused, thereafter brought suit.

The answers of each of the defendant companies set up as a defense to the action that before the fire occurred a change had taken place in the ownership of the property insured; that this fact had come to the knowledge of the plaintiff, and that plaintiff had failed to give notice of it to the defendants, in consequence of which the plaintiff had in each case forfeited all of its rights under the policies.

To such answers plaintiff replied:

"1. That there is no such evidence before the court showing that a change of ownership came to the knowledge of the plaintiff before the fire, as will warrant the court in inflicting upon the plaintiff forfeiture of its rights.

"2. That, supposing there was a change of owner-ship known to the plaintiff, there is no provision in either of the policies entitling the defendant to claim a forfeiture for failure on the part of plaintiff to report it.

"3. That at the time of the receipt of Kennon's letter of July 18th, and from that time forward until after the fire, the plaintiff was not the owner of the policies but was a mere naked trustee in the deed of trust, and as such was not bound to give notice of a change of ownership even if one came to its knowledge."

After taking the case under advisement Judge McElhinney of Division No. 1, found and gave judg-ment in favor of the defendant, Phoenix Insurance Company, whereas Judge Wurdeman of Division No. 2, after taking the case under advisement, found and gave judgment in favor of plaintiff and against the defendant, German-American Insurance Company. for $740.88. In due course appeals were taken in both cases.

## I.

We take up first the point raised by learned counsel for the plaintiff below, that there is no evidence that any change of ownership came to the knowledge of the plaintiff before the fire, as will warrant the court in inflicting upon the plaintiff forfeiture of its rights un-der either of these policies. In support of this con-tention it is seriously urged that Kennon's letter to the plaintiff, set out in full in the statement of facts above, does not necessarily mean that there was a change of ownership of the property in question, and that neither did it impart knowledge to the plaintiff that there was in point of fact a change of ownership, but that at most the letter only gave information to plaintiff of a claim of ownership on the part of said Kennon. To this we cannot agree.

The fact that the Shanks sold the property in question to Kennon is undisputed, and the fact that the plaintiff company received Kennon's letter of July 18, 1910, is admitted, in which letter Kennon enclosed

a check in payment of the then due interest note secured by deed of trust upon the property in question, and not alone notified the plaintiff company that he was the owner of the property, but requested that it attend to the transferring of the very insurance in question in suit. We can come to no other conclusion but that the plaintiff company must be held to have had knowledge of the change of ownership of the property in question from the date that it received Kennon's letter, dated July 18, 1910, in which appears the sentence: "I am the owner of the property and wish you would transfer the insurance." The receipt of this letter by the plaintiff company appears absolutely from the plaintiff's letter of July 19, 1910, acknowledging receipt of the said letter of Kennon, together with the enclosed check for $33 in payment of the interest note. This letter was signed by Charles N. Gilles, Assistant Secretary of the said trust company, one of the executive officers of the plaintiff company, for, according to the testimony of F. J. Hollocher, who was secretary of the plaintiff company and a witness for the defedant, "during that year the executive officers of the plaintiff were Mr. Hereford, president, myself, secretary, and Mr. Gilles, assistant secretary." And it is undisputed that Mr. Gilles, as part of his duties as assistant secretary, received and opened the mail of the trust company and saw to its proper distribution to the several departments in the trust company for answering.

In view of all the facts in this case we hold that whatever came to the knowledge of Gilles as one of the executive officers in his capacity of assistant secretary of this company, was knowledge of the company, and as we hold the information in the letter of Kennon's of July 18, 1910, must be construed as containing sufficient information to put the one receiving same upon notice that he was the owner of the premises in question, we hold that the plaintiff company had knowledge of the transfer of the ownership of the property in question on July 19, 1910, and we, therefore, rule this point against the plaintiff company.

## II.

Holding as we do that the plaintiff company had knowledge of the change of ownership, the question remaining that is decisive of the case must be determined upon the construction to be placed upon the mortgage clause attached to each of the said policies. In other words, what is the effect under the mortgage clauses of the plaintiff's failure to notify defendants of a change of ownership of the property in question, which change of ownership was known to plaintiff company?

It is conceded that the insured, George C. & Martha L. Shanks, having sold the property covered by the policies of insurance in question to J. R. Kennon, and as we have above determined that no notice of such change of ownership was given to the insurance company, the policies are void as to said Shanks and Kennon. [Marcus v. Ins. Co., 187 Mo. App. 134, 173 S. W. 30.]

The mortgage clause in each of the cases before us are the usual union or standard mortgage clauses and are attached to the policies in question, and thereby constitute a new and independent contract of insurance between the insurance company and The Trust Company of St. Louis County, trustee for the benefit of the *cestui que trust.* Such new contract is ingrafted upon the main contract of insurance contained in the policy itself to be rendered certain and understood by reference to the policy itself. Reference must be had to the original contract for the description of the property insured, the amount, rate and term of the policy. The rights and duties of the mortgagee or trustee, as well as those of the insurance company, must be determined then by the provisions of this independent contract as evidenced by the provisions of the said mortgage clause, taken in connection with the policy itself. [Syndicate Ins. Co. v. Bohn, 65 Fed. 165; Heilbrunn v. German Alliance Ins. Co., 202 N. Y. 610; Reed v. Firemen's Ins. Co., 81 N. J. L. 523.]

Does the proviso in said mortgage clause, that the mortgagee or trustee shall notify the insurance company of any change of ownership of the property insured, coming to its knowledge, create a condition? We find many definitions for the word "provided." "The word 'provided' always expresses a condition, unless it appears from the context to be to the intent of the parties that it shall constitute a covenant." [Rich v. Atwater, 16 Conn. 419.]

"The word 'provided' means 'on condition.'" [DeWitt v. Kaufman, 27 Tex. Civ. App. 332, 66 S. W. 224.]

"'Provided' is the appropriate word for creating a condition precedent." [Robertson v. Caw, 3 Barb. (N. Y.) 410.]

"The word 'provided' is recognized as implying a condition without the addition of any other words." [Paschall v. Passmore, 15 Pa. 295, 308.]

We feel safe in holding that the word "provided" ordinarily indicates that a condition follows but that "there is no magic in the term" but the clause in a contract or written instrument, following the word, "provided" is to be construed from the words employed and from the purposes of the parties gathered from the whole instrument. [Boston Sav. Trust Co. v. Thomas, 59 Kas. 470; Heaton v. Randall Co. Comm's, 20 Ind. 398, 403.]

As we read each of the clauses which follow the word "provided," its meaning is readily apparent and we find no ambiguity therein, nor does the language used indicate that the proviso is intended as a covenant. We therefore hold that the clause which provides that the interest of the mortgagee or trustee shall not be invalidated by any act or neglect of the mortgagor or owner of the property *ceases to be operative* whenever there is a change of ownership that comes to the knowledge of the mortgagee or trustee, and he fails or neglects to give notice thereto to the insurance company. The clauses in question can only be construed as meaning that the insurer has only agreed to sus-

pend the terms of the policy itself as to the mortgagee's or trustee's interest not to be affected by any act or neglect of the mortgagor or owner, *only so long as the said mortgagee or trustee shall comply with the conditions named,* among them being the condition requiring the mortgagee or trustee to notify the insurer of any change of ownership in the property that comes to their knowledge. It must follow that when, as in the cases at bar, the plaintiff though it had knowledge of the change of ownership of the property, failed or neglected to notify the insurers of such change, that the mortgage clause agreement cannot be held to be in force and effect from and after the time plaintiff had knowledge of such change of ownership and failed or neglected to notify the insurer thereof. In other words, we hold that the failure on the part of plaintiff to comply with the conditions in the mortgage clause suspends the operation of the same and leaves in force and effect the provisions of the policy as to the acts on the part of the owner or mortgagor which will operate to forfeit the policy. [Ormsby et al. v. Phoenix Ins. Co., 5 S. D. 72; Gasner v. Metropolitan Ins. Co., 13 Minn. 483; Cole v. Germania Ins. Co., 99 N. Y. 36; Continental Ins. Co. v. Anderson, 107 Ga. 541; Galantshik v. Globe Fire Ins. Co., 10 Miscel. 369.]

In coming to this conclusion we have in mind the well recognized rule of law in this State that provisions in a policy of insurance such as the ones before us, must be given as favorable a construction to the insured as possible. [Mathews v. Modern Woodmen, 236 Mo. 326, 139 S. W. 151; Brown v. Connecticut Fire Ins. Co., 197 Mo. App. 317, 195 S. W. 62, and cases cited.] But one of the stipulations of the policy provided that the policy "shall be cancelled at any time at the request of the insured or by the company by giving five days' notice of such concellation." This provision was inserted, amongst other reasons no doubt, to enable the insurer to cancel the policy in the event of a change of ownership of the property which in its judgment affected the character of the risk. Can we

say in the instant case before us that the failure or neglect of plaintiff to notify the insurers, was an immaterial matter? Even were this question one which should control the determination of this case, to which we do not agree, yet how could it be said but that the insurer would have cancelled the insurance upon being notified of the change of ownership of the property, particularly when the new owner was not going to occupy the premises and was a non-resident of the county in which the property was located?

We accordingly rule that plaintiff, having violated the said condition contained in each of the mortgage clauses by failing to give notice to the insurance company of the change of ownership, cannot recover.

The judgment entered below in favor of the Phoenix Insurance Company of Hartford, Connecticut, is affirmed. The judgment rendered below in favor of The Trust Company of St. Louis County and against The German-American Insurance Company of New York is reversed and the cause remanded with direction to the circuit court to enter a judgment for said defendant.

*Reynolds, P. J.,* and *Allen, J.,* concurs.